**In re PLAD, INC., Debtor.**

**SINO–AMERICAN ECONOMIC DEVELOPMENT CORPORATION, Plaintiff,**

v.

**PLAD, INC. and First American National Bank, Defendants.**

**Bankruptcy No. 382–01282.**
**Adv. No. 382–0291.**

United States Bankruptcy Court,
M. D. Tennessee.

Aug. 11, 1982.

Clyde Paul Holland, Nashville, Tenn., for plaintiff.

Samuel L. Felker, Nashville, Tenn., for defendant, First American Nat. Bank.

## MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

This adversary proceeding was initiated by the plaintiff Sino-American Economic Development Corporation's (hereinafter "Sino-American") complaint seeking relief from the automatic stay imposed by 11 U.S.C. § 362.[1] Sino-American requests this relief in order to repossess five pieces of machine tools which Sino-American delivered to the debtor Plad, Inc. prior to the filing of the involuntary Chapter 7 bankruptcy petition against the debtor. The defendant First American National Bank (hereinafter "First American"), a second creditor of the debtor, opposes Sino-American's complaint, essentially contending that Sino-American's delivery of the machine tools constituted a consignment which was not perfected in accordance with state law. First American asserts that its perfected security interest in the debtor's inventory is superior to Sino-American's unperfected interest and thus Sino-American cannot be granted relief from the stay. Upon consideration of the evidence presented at the hearing of this matter, stipulations, exhibits, briefs of the parties and the entire record, this court concludes that the plaintiff's complaint for relief from the stay should be denied.

The following shall constitute findings of fact and conclusions of law pursuant to Rule 752 of the Federal Rules of Bankruptcy Procedure.

The debtor Plad, Inc. is engaged in the welding business. In late 1981, the debtor began negotiations with Sino-American to become Sino-American's distributor of Chinese manufactured machine tools in the southeastern region of the United States. On December 10, 1981, Louis Chao, chairman of Sino-American, gave the debtor written authorization to pick up five pieces of machine tools which were to be used as samples in accordance with the proposed agreement between Sino-American and the debtor. The letter sent to the debtor spe-

---

1. 11 U.S.C.A. § 362(d) (West 1979) governs petitions for relief from the automatic stay. Section 362(d) provides as follows:

"(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization."

cifically stated that the tools in question were owned by Sino-American. On December 14, 1981, Neal Sullivan, president of the debtor, responded that he was very excited about the possibility of acting as distributor for Sino-American and outlined one of the potential responsibilities of the debtor as the demonstration of Sino-American's equipment to prospective customers and dealers.

At the hearing of this matter, Dr. Rawls, executive vice-president of Sino-American, testified that Sino-American delivered these tools for the debtor's evaluation and specifically asked the debtor not to use the equipment. Rawls further testified that the debtor was obligated to return these tools to Sino-American should the debtor fail to purchase them.

Under these circumstances, this court can only conclude that the Sino-American's delivery of the tools to the debtor constituted a "sale or return" as defined by § 47–2–326 of the Tennessee Code. Section 47–2–326 provides in pertinent part:

"*Sale on approval and sale or return— Consignment sales and rights of creditors* —(1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is:

(a) a 'sale on approval' if the goods are delivered primarily for use, and

(b) a 'sale or return' if the goods are delivered primarily for resale.

(2) Except as provided in subsection (3), goods held on approval are not subject to the claims of the buyer's creditors until acceptance; goods held on sale or return are subject to such claims while in the buyer's possession.

(3) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than a name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as 'on consignment' or 'on memorandum.' However, this subsection is not applicable if the person making delivery:

(a) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or

(b) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or

(c) complies with the filing provisions of the chapter on Secured Transactions (chapter 9 of this title)."

Tenn.Code Ann. § 47–2–326 (1979).

The provisions of § 47–2–326 encompass any commercial transaction in which delivered goods may be returned to the seller by the buyer. *See Financeamerica Corporation v. Morris (In the Matter of K.L.P., Inc.),* 7 B.R. 256, 257 (Bkrtcy.N.D. Ga.1980). And, unless the commercial transaction is found to be a "sale on approval," the seller is required to comply with the notoriety provisions outlined in § 47–2–326 in order to protect his interest in the delivered goods against claims of the potential buyer's creditors. Professor Shanker, a leading commentator on commercial law, has aptly explained the situations in which a deliverer of goods would have to comply with these notoriety provisions:

"The first situation is called 'the sale or return' situation. It arises where the seller delivers the goods to a buyer primarily for the purpose of permitting the buyer to resell them to his customers. But, even though this is the prime purpose for the delivery, nonetheless, the buyer has the privilege of returning the goods to the seller despite the fact that they completely conformed to the contract for sale.

The second situation contemplated by 2–326 arises where ever goods are delivered to a person for sale; and that person maintains a place of business in which he deals in goods of that kind under a name other than the name of the person mak-

ing the delivery. Notice, this second situation may be a broader one than the first 'sale or return' situation. The first situation apparently arises where there is established a buyer-seller relationship, but, notwithstanding, the buyer has the right to return the goods to the seller. In the second situation the right to return the goods may *not* be critical. It may not be necessary even to establish that the person receiving the goods was buying them. Rather, the precise conditions which bring one within the second situation are these: (1) were the goods delivered to a person for sale; (2) did that person do business in goods of that kind; and (3) did he do so in a name other than the name of the person who delivered the goods. If these three elements are present, then apparently you are within the second situation contemplated by 2–326, and must comply with the notoriety requirements."

Shanker, 40 J. of the Nat'l Conf. of Ref. in Bankr. 37, 38 (1966), *quoted in Buchanan v. Mobile Home Guaranty Corporation (In re International Mobile Homes of Johnson City, Inc.)*, 14 U.C.C.Rep.Serv. 1150, 1155 (Bankr.E.D.Tenn.1974).

█ The present case falls within the "sale or return" category. The representative for Sino-American testified that the tools in question were not to be used by the debtor but were instead delivered as samples of the equipment which the debtor would be selling should it accept the distributorship agreement with Sino-American. The representative further stated that Sino-American expected to be paid for the tools if they were not returned to Sino-American. These facts clearly establish a "sale or return" transaction and, therefore, Sino-American was required to comply with the notoriety requirements set forth in § 47–2–326. The evidence is undisputed that Sino-American did not comply with these provisions. Sino-American is thus an unsecured creditor of the debtor and not entitled to relief from the stay. Such a finding comports with the primary purpose of § 47–2–326 to "subordinate secret consignment seller claims to claims made by creditors of

consignment buyers." *Financeamerica Corporation v. Morris (In the Matter of KLP, Inc.)*, 7 B.R. at 258. *See also Newhall v. Haines*, 31 U.C.C.Rep.Serv. 1291, 1294 (D.Mont.1981); Tenn.Code Ann. § 47–2–326 comment 2 (1979); 1 U.C.C.Serv. (M.B.) § 4A.05[2], at 4A–76 to 4A–77 (1982).

The court will accordingly enter an order denying the plaintiff's complaint for relief from the stay.

IT IS, THEREFORE, SO ORDERED.